UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ROBERT A. MCNEIL, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 17-cv-2602 (RC) |
| | : | | |
| v. | : | Re Document No.: | 11 |
| | : | | |
| JANICE R. BROWN, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING PLAINTIFFS' MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO DISMISS;
SUA SPONTE DISMISSING CLAIMS AGAINST REMAINING DEFENDANTS; DENYING AS MOOT
REMAINING MOTIONS

## I. INTRODUCTION

*Pro se* Plaintiffs are on a mission to prove a years-long, multi-agency conspiracy to falsify tax records in order to wrongfully fine and incarcerate Plaintiffs. They now claim that three judges and one employee of the U.S. Court of Appeals for the District of Columbia Circuit are in on the ruse.

In this case, Plaintiffs seek a seven-part declaratory judgment against three D.C. Circuit judges[1] and one unknown government employee for violations of their First and Fifth Amendment rights. Plaintiffs' interactions with Defendants stem from their refusal to pay income taxes, which has resulted in Plaintiffs' pursuit by the Internal Revenue Service ("IRS"). Plaintiffs allege that the IRS has been pretending to file substitute income tax returns on their behalf and that through this "record falsification program," the IRS has subjected them to harsh penalties such as monetary fines and incarceration. In response, Plaintiffs filed numerous

---

[1] Defendant Janice Rogers Brown retired from the federal bench on August 31, 2017.

lawsuits against the Department of Justice ("DOJ") and the IRS. Defendants in this case are three of the D.C. Circuit judges who presided over the appeals of eight of these cases after they were dismissed as barred by the Anti-Injunction Act, as well as one unknown court employee who Plaintiffs believe actually wrote the D.C. Circuit orders affirming each case's dismissal. Plaintiffs now seek a declaratory judgment against Defendants acknowledging that Defendants failed to properly adjudicate their appeals, as Plaintiffs believe they were constitutionally required to do.

The only defendant to be served in this case, Judge Brown, has moved to dismiss Plaintiffs' case on six grounds, arguing that (1) the Court lacks jurisdiction to hear a *Bivens* action seeking equitable relief because *Bivens* does not authorize suits seeking equitable relief; (2) the Court lacks jurisdiction over Plaintiffs' Declaratory Judgment Act claims because there is no case or controversy to resolve; (3) the Court should exercise its discretion to dismiss the case; (4) Plaintiffs lack standing; (5) Plaintiffs had other remedies available to them; and (6) Plaintiffs failed to state a claim upon which relief can be granted. Because Plaintiffs have failed to establish that they have Article III standing, the Court grants Judge Brown's motion to dismiss for lack of subject matter jurisdiction. Additionally, the Court dismisses Plaintiffs' claims against Judge Ginsburg, Judge Wilkins, and the unknown government employee, for failure to prosecute those claims.[2] Further, because the Court dismisses the case for lack of subject matter jurisdiction, the remaining motions pending in this case are denied as moot.

---

[2] The Court issued an order to show cause why this case should not be dismissed for noncompliance with Federal Rules of Civil Procedure 4(i) and 4(m) on March 9, 2018, *see* ECF No. 4. Plaintiffs served the Attorney General and the U.S. Attorney for the District of Columbia on March 14, 2018, *see* ECF No. 5, completing service as to Judge Brown. However, Plaintiffs never served Judge Ginsburg or Judge Wilkins, and therefore the Court also dismisses Plaintiffs' claims against them for failure to serve these defendants pursuant to Rule 4(m) and failure to prosecute their claims against these defendants pursuant to Rule 41(b). *See Kopff v. Battaglia*,

## II. FACTUAL BACKGROUND

This case stems from a series of suits filed by Plaintiffs against the IRS and DOJ.[3] Plaintiffs allege that IRS employees used falsified digital records to pretend to prepare substitute income tax returns on their behalf. Compl. ¶¶ 2–3, ECF No. 1. In order to challenge this alleged practice, Plaintiffs filed ten lawsuits in the federal courts in the District of Columbia and California claiming that "A.) IRS has repeatedly conceded it has no authority to prepare substitute income tax returns, that B.) IRS does NOT prepare substitute income tax returns on any date concerning targeted nontaxpayers, and that C.) IRS systematically falsifies its internal software to conceal that failure/inability to prepare substitute income tax returns." *Id.* ¶ 1 (footnotes omitted). Plaintiffs believe that the federal government "outrageously use[s] the fruit of the IRS record falsification program to justify incarcerating and/or stealing the property of those who don't voluntarily comply with the federal bar's income tax fraud." *Id.* ¶ 4.

Plaintiffs claim that, in pursuing the underlying cases, one of the three core factual contentions they sought to have confirmed was whether the IRS "never actually prepares substitutes for [income tax] returns, but rather inputs computer codes to make it appear as though a substitute [income tax] return has been filed." Compl. ¶ 6 (quoting Gov't Mot. Consolidate Cases, *Stanley v. Lynch,* No. 17-cv-22, ECF No. 11 (D.D.C. Mar. 8, 2017)). Citing *Long v.*

---

425 F. Supp. 2d 76, 80 (D.D.C. 2006) (dismissing claims against ten defendants without prejudice where plaintiff did not file proof of service); *see also* Local Civ. R. 83.23 ("A dismissal for failure to prosecute may be ordered by the Court upon motion by an adverse party, or upon the Court's own motion."). However, even if Plaintiffs had prosecuted their claims against these three defendants, the Court would have still dismissed those claims for the same reasons it dismisses the claims against Judge Brown.

[3] The appeals of the dismissals of those suits are: *Ellis v. Commissioner*, 15-5035 (D.C. Cir.); *McNeil v. Commissioner*, 16-5233 (D.C. Cir.); *DePolo v. Ciraolo-Klepper*, 16-5308 (D.C. Cir.); *Crumpacker v. Ciraolo-Klepper*, 17-5054 (D.C. Cir.); *McGarvin v. Ryan O. McMonagle*, 17-5055 (D.C. Cir.); *Podgorny v. Ciraolo-Klepper*, 17-5056 (D.C. Cir.); *DeOrio v. Ciraolo-Klepper*, 17-5057 (D.C. Cir.); *Dwaileebe v. Martineau*, 17-5058 (D.C. Cir.).

*Rasmussen*, Plaintiffs contend that

> [t]he revenue laws are a code or system in regulation of tax assessment and collection. They relate to taxpayers, and not to nontaxpayers. The latter are without their scope. No procedure is prescribed for nontaxpayers, and no attempt is made to annul any of their rights and remedies in due course of the law. With them Congress does not assume to deal, and they are neither of the subject nor of the object of the revenue laws.

Compl. ¶ 1, n.3. In essence, Plaintiffs' underlying cases revolved around a belief that the Internal Revenue Code does not apply to them.

Each of Plaintiffs' underlying cases were dismissed as barred by the Anti-Injunction Act. *Id.* ¶ 11. Plaintiffs sued the judges who dismissed those cases, claiming that they were dismissed for fraudulent reasons. *McNeil v. Harvey*, No. 17-cv-1720 (D.D.C.). Now Plaintiffs have also sued the D.C. Circuit judges who affirmed the dismissals of the underlying cases. As to Judge Brown, they allege that "in multiple appeals, her name was used to provide a parody of justice without the power thereof; over her name the rights of fellow Americans[] to meaningful appellate remedy were gutted, and in her name, orders were issued viciously suppressing the screams of victims while creating the fraudulent appearance of pretended 'precedent'. Rights-raped, robbed, wrongly incarcerated Americans object to the farce." Compl. at 11.

Plaintiffs now seek a seven-part declaratory judgment answering the following questions in regard to each of the four appellate cases:

> 1. Was appellate relief denied in EIGHT appeals filed by Class Plaintiffs, (see Exhibits B, C, D and E), without clearly identifying the standard of review used, without providing any explanation how the Anti-Injunction Act supposedly applied to the actual allegations and relief the litigants sought below, and without explaining how the equitable exception to the AIA supposedly did not apply to those allegations and relief sought?
> 2. From the four unpublished denial "orders" presented on pretty Circuit letterhead, is it possible that a single source who is NOT a United States Circuit Judge authored them?

> 3. Is it possible that the author of the "orders" concealed the standard of review utilized because he used the "clearly erroneous" standard, despite the fact the trial court judges resolved no contested issues of fact, but instead fabricated, then attributed to plaintiffs, allegations they did not make, and relief they did not seek?
> 4. Based on the orders before the Court, since a clear error standard is repeatedly inferred, ("Appellant has not shown that . . .") is it possible that the author applied the Anti-Injunction Act to the allegations and relief fabricated by attorneys in the district court, then attributed to Plaintiffs, in utter derogation of the appellants' complaint on appeal of those fabrications?
> 5. Based on the four unsigned, unpublished Orders now before this Court, did the author resolve de novo the contested dispositive legal controversy whether 28 U.S.C. §6020(b) grants power to create substitute returns in income tax matters, despite the Commissioner's repeated public concessions 6020(b) does NOT?
> 6. Did the denial of the EIGHT appeals in such fashion violate the litigants' rights to adequate, effective and meaningful access to courts and prove that ACTUAL appellate relief does not exist in cases alleging that IRS attorneys have approved the use of systematically falsified government records, and that government attorneys falsify the record of litigation to prevent successful appeals?
> 7. Are Americans' rights to meaningful appellate relief from the underlying alleged IRS record falsification program constantly being violated by the Defendants' collusion to prevent their victims' from exercising their rights to secure meaningful appellate remedy, which collusion will continue indefinitely unless the requested declaratory judgments issue?

*Id.* ¶ 17.

Plaintiffs have taken pains to emphasize that they are not challenging any actions taken by the IRS, DOJ, or any executive branch personnel to enforce the income tax. *Id.* ¶ 7. Furthermore, they claim that they do not seek a declaratory judgment assessing any income tax liability. *Id.* Instead, Plaintiffs believe that if the Court were to grant their seven-part declaratory judgment against Defendants, "such relief would allow IRS victims to file cases with ability to engage ACTUAL appellate relief from 'errors' in the courts below, rather than suffer the parody of appellate remedy now playing in the D.C. Circuit, thanks to the Defendants." *Id.* ¶ 15.

Judge Brown has moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and failure to state a claim. *See* Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 11. Her motion is now ripe for decision.

### III. LEGAL STANDARD

When evaluating a motion to dismiss, a court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Grant v. Ent. Cruises, Inc.*, 282 F. Supp. 3d 114, 116 (D.D.C. 2017) (quoting *Sparrow v. United Air Lines*, *Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard governs the consideration of motions filed under both Rule 12(b)(1) and 12(b)(6). *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ("[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss under Rule 12(b)(1), plaintiffs bear the burden of proving that the court has subject matter jurisdiction to hear their claims. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 & n.3 (2006); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'Plaintiff[s'] factual allegations in the complaint . . . will bear closer

scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F. Supp. 2d 163, 170 (D.D.C. 2007).

## IV. ANALYSIS

Judge Brown has moved to dismiss on six grounds. She first argues that Plaintiffs' suit should be dismissed because *Bivens* does not authorize suits for equitable relief. Def.'s Mot. at 3–4. Judge Brown believes that this remedial limitation deprives the court of subject matter jurisdiction over this case. *Id.* Second, Judge Brown argues that because Plaintiffs explain that "they do NOT seek, by filing this suit, to compel any act whatsoever from anyone, or to secure any judgment that the 'orders' in question are in error, or that the 'orders' be reversed," there is no case or controversy and the Court lacks jurisdiction over their Declaratory Judgment Act claims. *Id.* at 5. Third, Judge Brown argues that the Court should exercise its discretion to dismiss these claims. *Id.* at 6. Fourth, Judge Brown argues that Plaintiffs lack standing. *Id.* at 7. Fifth, Judge Brown argues that an appeal to the U.S. Supreme Court would have been the appropriate remedy for Plaintiffs' discontent with Judge Brown's rulings. *Id.* at 7. Sixth, Judge Brown argues that Plaintiffs have failed to state a claim upon which relief can be granted. *Id.* at 8. Judge Brown does not argue that she is judicially immune from declaratory relief. *See generally id*. [4]

---

[4] Although the D.C. Circuit has not addressed whether judicial immunity extends to equitable relief and Judge Brown did not raise this issue in her motion, judges acting in their judicial capacity, as here, are likely to be absolutely immune from actions for equitable relief under *Bivens*. *See Hill v. Traxler*, No. 13-1037, 2013 WL 4580456 (D.D.C. July 9, 2013), *aff'd*, 550 F. App'x 1 (D.C. Cir. 2013) (citing *Edmonson v. Lee*, No. 08-149, 2008 WL 2080912, at *3 (S.D. Miss. May 9, 2008) (dismissing as frivolous complaint by state prisoner against federal judges because "the judicial Defendants are absolutely immune from suit for monetary damages as well as equitable relief")); *Wightman v. Jones*, 809 F. Supp. 474, 479 (N.D. Tex. 1992) (concluding that judicial immunity bars *Bivens* claims against judges seeking both declaratory and equitable relief). Absolute immunity prevents both "horizontal appeals" from one district

Plaintiffs generally refute all arguments in the motion to dismiss. They retort that they are able to obtain declaratory judgment in this action. *See* Pl.'s Opp'n Mot. Dismiss 8, ECF No. 27. They further contend that the underlying eight alleged fraudulent orders establish a case or controversy that supports the declaratory judgment they seek. *See id.* at 9. Plaintiffs argue that a declaration from Judge Brown would "produce an incredible array of salutary results" sufficient to satisfy the requirements of standing. *Id.* at 11. They suggest that Judge Brown's orders were deliberately written so as to prevent appellate review. *See id.* at 13–14. And they argue that they have pled their claims sufficiently to defeat the motion to dismiss for failure to state a claim. *See id.* at 16–25.

For the reasons set forth below, the Court finds that it does not have subject matter jurisdiction over this case because Plaintiffs lack Article III standing. Because the Court lacks subject matter jurisdiction over this case, the Court denies as moot the remaining motions pending in this case, none of which have any bearing on this Court's subject matter jurisdiction.

**A. Motion to Strike**

Plaintiffs claim that because they have sued Judge Brown in her personal capacity, she is not entitled to legal representation by the Department of Justice. Under this pretense, Plaintiffs object to defense counsel's filing of the motion to dismiss and move to strike it from the record. *See* Pls.' Opp'n & Mot. Strike, ECF No. 13. However, the Court does not have the power to

---

court to another and "reverse reviewing" a ruling of the Court of Appeals by a District Court. *See Mullis v. United States Bankruptcy Court for the District of Nevada*, 828 F.2d 1385, 1392–93 (9th Cir. 1987), *cert. denied*, 486 U.S. 1040 (1988); *Newsome v. Merz*, No. 00–4307, 2001 WL 1006189, at *1 (6th Cir. Aug. 21, 2001); *Bolin v. Story*, 225 F.3d 1234, 1239–1242 (11th Cir. 2000); *Moore v. Brewster*, 96 F.3d 1240, 1243–44 (9th Cir. 1996). This immunity exists "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (quoting *Bradley v. Fisher*, 13 Wall. 335, 349 n. 16 (1872)).

review the DOJ's decision to represent Judge Brown. Therefore, the Court denies Plaintiffs' motion to strike Judge Brown's motion to dismiss.

Federal regulations provide that "a federal employee (hereby defined to include present and former Federal officials and employees) may be provided representation in civil . . . proceedings in which he is sued, subpoenaed, or charged in his individual capacity, . . . when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States." 28 C.F.R. § 50.15(a).

"Under the clear language of the regulation, . . . it is within the Attorney General's judgment and discretion, not this court's, to determine whether the allegations against [Defendant] 'reasonably appear to have been performed within the scope of [her] employment' and whether such representation is in the public interest." *Al-Tamimi v. Adelson*, 16-cv-445, 2016 WL 10655512, at *1 (D.D.C. Dec. 15, 2016) (quoting 28 C.F.R. § 50.15(a)); *see also Rodriguez v. Shulman*, 843 F. Supp. 2d 96, 100 (D.D.C. 2012) ("[T]he language of the regulations makes clear it is for the Government to determine whether federal employees should receive representation."); *Falkowski v. E.E.O.C.*, 783 F.2d 252, 253 (D.C. Cir. 1986) (declining to review Attorney General's decision not to provide representation because decision fell within discretionary authority).

Because such a determination is "within the Attorney General's judgment and discretion," the Court will not interfere with the Department of Justice's decision to represent Judge Brown, who, though sued in her personal capacity, has been sued for orders she issued as a

9

federal judge. Therefore, the Court denies Plaintiffs' motion to strike and will review the documents filed by defense counsel when adjudicating Defendant's motion to dismiss.

## B. Standing

Judge Brown has moved to dismiss Plaintiffs' Complaint for lack of standing. She specifies that "[e]ven assuming Plaintiffs have suffered injuries as a result of Judge Brown's conduct (which she disputes), Plaintiffs lack standing to bring a suit against Judge Brown in her individual capacity because she cannot redress those injuries." Def.'s Mot. at 6. Plaintiffs respond that Judge Brown could redress their injuries because "[a] few page affidavit/declaration clarifying the provenance of the 'orders' . . . would utterly end this case" and also "produce an incredible array of salutary results" by "end[ing] the reign of unaccountable clerks and judges cynically, brazenly committing criminal acts to obstruct justice, such as falsifying federal case records by issuing fraudulent 'orders' without judicial involvement." Pl.'s Opp'n Mot. Dismiss at 11. Plaintiffs are incorrect.

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III," and a party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In order to have standing to bring suit, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (alterations in original) (citation omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed

by a favorable decision.'" *Id.* at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." *US Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

In reviewing a question of standing, the Court must not evaluate the merits of the case, but instead must analyze these elements as if plaintiffs were to be successful in their claim. *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)). Here, even if the Court were to assume for the purposes of this analysis that Plaintiffs have suffered injuries in fact and that those injuries are fairly traceable to Judge Brown's alleged conduct, Plaintiffs have still failed to establish standing because the relief they seek would not redress their injuries.

"Redressability examines whether the relief sought, assuming that the court chooses to grant it, w[ould] likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996)). It "requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (emphasis in original). To demonstrate that their injuries are redressable, Plaintiffs must show in the first instance that the court is capable of granting the relief they seek. *See Newdow v. Roberts*, 603 F.3d 1002, 1010–11 (D.C. Cir. 2000) (plaintiffs could not establish redressability because "[i]t [was] impossible for th[e] court to grant [their requested] relief"); *Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996) (indicating that the "'redressability' element of standing" entails the question of "whether a federal court has the power to grant [the plaintiff's requested] relief"); *Lozansky v. Obama*, 841 F.Supp.2d 124, 132 (D.D.C. 2012) ("Plaintiffs . . . lack standing

because the Court cannot issue the requested writ of mandamus, as they do not have the authority to do so, and thus cannot redress the [claimed] injury.").

Here, the Court is not capable of granting the relief Plaintiffs seek because the declaratory judgment Plaintiffs seek would not void, recognize as void, or indeed have any legal effect on Judge Brown's three orders, and therefore would not in any way redress any of Plaintiffs' alleged injuries. Plaintiffs claim that they "do NOT seek, in this case, to secure a judgment that the four orders in consideration are 'in error', and Plaintiffs DO NOT seek to 'reverse' any of the four judgments, which should remain a living public testament to attorney fraud." Compl. ¶ 7(g). However, Plaintiffs do appear to believe that a declaratory judgment from this Court would force some action from Judge Brown or whichever D.C. Circuit judge might be reassigned to these cases. They note in their complaint that "[t]he Defendant attorneys [as Plaintiffs call the judges] can EASILY provide the standard upon which review of each appeal was based, and EASILY explain its application with regard to Plaintiffs' actual Complaint allegations," and therefore "this extraordinary case imposes no burden on the Defendants whatsoever." *Id.* ¶ 7(k). Plaintiffs similarly note in their opposition to the motion to dismiss that the relief sought would "end t[heir] case" and "end the reign of unaccountable clerks and judges . . . falsifying federal case records[.]" Pl.'s Opp'n Mot. Dismiss at 11.

From these allegations, it is clear that this case is meant to be a collateral attack of some sort on Judge Brown's decision in three of the appeals. Because it appears that Plaintiffs do in fact expect their proposed declaratory judgments to have some legal effect on Judge Brown's orders, it should be noted that federal district courts lack the power to void or otherwise alter other federal courts' orders through a collateral attack. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("[It] is for the court of first instance to determine the question of the validity of

12

the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected."). Indeed, "[t]he doctrine barring improper collateral attacks has been applied specifically to parties seeking a declaratory judgment challenging a ruling in a separate action because '[d]eclaratory relief against a judge for final actions taken within his or her judicial capacity is instead available by way of a direct appeal of the judge's order.'" *Sibley v. Roberts*, 224 F. Supp. 3d 29, 38 (D.D.C. 2016) (quoting *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 135 (D.D.C. 2013)).

Here, Judge Brown was clearly acting within her judicial capacity when she affirmed the dismissals of Plaintiffs' underlying lawsuits. Determining whether the court has subject matter jurisdiction over a lawsuit, and dismissing the lawsuit if it does not, is a fundamental duty of a federal judge. *See Am. Petro. Inst. v. SEC*, 714 F.3d 1329, 1336 (D.C. Cir. 2013) ("[A] federal court has the duty to determine whether it has subject-matter jurisdiction." (quoting *Bouchet v. Nat'l Urban League, Inc.*, 730 F.2d 799 at 805, (D.C. Cir. 1984))). She did so, and thereby affirmed the District Court judges' dismissals, in her capacity as a D.C. Circuit judge.

Plaintiffs allege that Judge Brown's conduct was extrajudicial because she colluded with other judges "to conceal from litigants 1.) the standard of review upon which their appeals were denied, 2.) how that standard applied to the ACTUAL allegations and relief sought in Plaintiffs' Complaints, 3.) a reliance upon falsified 'findings' by attorneys in the courts below and 4.) reliance upon improper, contravened presumptions, while creating, by fraud, the appearance of claim preclusive precedent, despite not adjudicating the actual appeal." Compl. ¶ 7(e). Plaintiffs further believe that, despite this "collusion," it is possible that "no Circuit judge wrote such Orders, but that the unknown-named Defendant wrote the orders, then affixed the named Defendants['] surnames thereto." *Id.* ¶ 28.

None of these allegations alter the Court's assessment that Judge Brown's conduct was within her judicial capacity, and therefore that the Court may not collaterally review it. Court of Appeals judges are permitted to summarily affirm lower court decisions. *See* Fed. R. App. P. 36(a)(2) ("A judgment is entered when it is noted on the docket. The clerk must prepare, sign, and enter the judgment: if a judgment is *rendered without an opinion*, as the court instructs." (emphasis added)). Plaintiffs have alleged no facts that allow the Court to plausibly infer that Judge Brown was acting outside of her judicial capacity when she affirmed the three lower court dismissals.

Second, Judge Brown is correct that if Plaintiffs took issue with her orders in the underlying cases, the proper avenue through which to address those objections was through an appeal, either through a petition for *en banc* review before the D.C. Circuit or through a petition for writ of certiorari to the U.S. Supreme Court. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[A judge's] errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation."); *see also Jenkins v. Kerry*, 928 F. Supp. 2d 122, 135 (D.D.C. 2013) ("[D]eclaratory relief against a judge for final actions taken within his or her judicial capacity is . . . available by way of direct appeal of the judge's order."). This limitation is based on sound logic, because "[w]hen a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court." *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1422 (9th Cir. 1986).

Plaintiffs make no mention of whether they have attempted to appeal Judge Brown's orders through the proper channels. Plaintiffs do explain that in one of the underlying cases,

reviewed and affirmed by Judges Kavanaugh, Pillard, and Wilkins, Plaintiff Dwaileebe has moved for *en banc* review. *See* Compl. ¶ 8; *see also* Compl. Ex. E, ECF No. 1-1. More generally, Plaintiffs appear to believe that Judge Brown's orders were purposefully crafted in a manner that misstated their arguments, so as to deny meaningful appellate review. *See* Pl's Opp'n to Mot. Dismiss 13–14. Plaintiffs do not explain how such a fraudulently written order would deprive them of their ability to apply for certiorari, point out the misstatements in the orders, and seek redress of the alleged fraud through the proper channels. Because only the *en banc* D.C. Circuit and the U.S. Supreme Court have the power to review Judge Brown's orders, this Court does not have the power to redress Plaintiffs' alleged injuries. *See Sanders v. United States*, 184 F. App'x 13, 14 (D.C. Cir. 2006) ("The district court correctly concluded that it lacked jurisdiction to review decisions of the United States Court of Appeals for the Fourth Circuit.") As such, Plaintiffs lack Article III standing, and their case must be dismissed.

### C. The Remaining Motions

Plaintiffs have filed four other motions: (1) a motion to take judicial notice of the fact that Judge Cooper found that Plaintiffs have not violated an injunction issued in *Crumpacker v. Ciraolo-Klepper*, No. 16-cv-1053 (D.D.C.) by filing this case, and for default judgment, ECF No. 6; (2) a renewed motion for default judgment, ECF No. 8; (3) a motion to take judicial notice of recent filings in related cases involving Plaintiffs, ECF No. 23; and (4) a second renewed motion for default judgment, ECF No. 26. The motions to take judicial notice ask the Court to notice facts that do not affect the Court's determination that it lacks subject matter jurisdiction over this case, and therefore are denied as moot. Similarly, because the Court does not have

subject matter jurisdiction over Plaintiffs' claims, Plaintiffs' motions for default judgment are denied as moot.[5]

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 11) is **GRANTED**; and Plaintiffs' Motion to Strike (ECF No. 15) is **DENIED**. Additionally, the claims against the remaining Defendants are denied for failure to serve and failure to prosecute. Because this case has been dismissed for lack of subject matter jurisdiction, the remainder of the motions pending in this case are **DENIED AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 26, 2018                                                            RUDOLPH CONTRERAS
                                                                                                                United States District Judge

---

[5] In the alternative, Plaintiffs' motions for default judgment are denied outright because the Court lacks subject matter jurisdiction over Plaintiffs' claims. *See Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 74 (D.D.C. 2017) ("[T]he procedural posture of a default does not relieve a federal court of its 'affirmative obligation' to determine whether it has subject matter jurisdiction over the action."); *see also Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) ("A default judgment rendered in excess of a court's jurisdiction is void.").